ure to use the bar was not connected with the accident. No negligent act or direction of the superintendent is shown to have been the cause of the injury.

The judgment and order must be affirmed, with costs. All concur.

(129 App. Div. 543.)

MOSBACH v. UNION RY. CO. OF NEW YORK CITY.

(Supreme Court, Appellate Division, Second Department. December 30, 1908.)

·CARRIERS (§ 318*) — CARRIAGE OF PASSENGERS—PERSONAL INJURIES—EVIDENCE OF NEGLIGENCE.

Evidence in an action against a carrier by one who attempted to board one of its cars and was injured in the attempt considered, and *held* sufficient to sustain a finding of negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1313; Dec. Dig. § 318.*]

Gaynor and Jenks, JJ., dissenting.

Appeal from Trial Term, Westchester County.

Action by Margaret Mosbach, as administratrix, etc.,· of Louis J. Mosbach, deceased, against the Union Railway Company of New York City. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Bayard H. Ames (Vine H. Smith, on the brief), for appellant.
James G. Graham, for respondent.

HOOKER, J. It is doubtless true that a street railroad corporation has the right to carry its injured cars to the barn for repair without being compelled to receive passengers upon them. It is also doubtless true that a whole car may be used to supply the motive power for removing the injured car to a place of repair. Under the circumstances of this case, however, I think the jury was justified in thinking that the appearance of the car and its management were both such that a reasonable man would have been justified in supposing that the car was for the purpose of accommodating passengers. It appears that the first car, upon which the deceased attempted to step, "had the appearance of a regular passenger car." The witness Shaw, in his evidence, says that he saw the car approach along Jerome avenue from the south, three or four blocks away from Burnside avenue, where he was standing, waiting to go north on Jerome avenue. Shaw and the deceased were standing on the north side of the Burnside avenue car tracks, and hence in the place where the Jerome avenue car would naturally stop to receive passengers. The car approached Burnside avenue very slowly, and crossed the Burnside avenue tracks slowly, and then, after crossing those tracks and proceeding northerly, it decreased its speed. Shaw got upon the car when it was·either standing still or moving very slowly indeed, and as the deceased, following him, got one foot upon the car and one hand upon the hand rail, Shaw says that the motorman "threw the power on," and this was what jerked the deceased off. It also appears that the conductor did not

warn Shaw or the plaintiff not to get upon the car, but stood upon the rear platform while they were endeavoring to board it, referring to a book he had in his hand.

Shaw says the rear platform gate was partly closed, and qualifies this somewhat in defendant's favor on cross-examination; but yet I think the state of the evidence is such that the jury might find it was not so far closed as to prevent ingress. Even then it was some notice not to board, but other appearances were enough to contradict this. I think from all the evidence the jury were justified in finding that the appearance of the car and its management and the conduct of the conductor were all such that a reasonable man would, under circumstances of this sort, reasonably fail to comprehend that the car was not meant for passengers. If that is so, then the case resolves itself into the ordinary one where a car stops, or practically stops, at a point which is used ordinarily for the reception of passengers, and where an intending passenger, in attempting to board, is jerked off. Shaw says he raised his right hand, the motorman was in plain view, and there was plenty of light there.

It seems to me that there was evidence to support the finding of negligence, and I advise to affirm.

RICH and MILLER, JJ., concur. GAYNOR, J., reads for reversal, with whom JENKS, J., concurs, on the last ground stated in the opinion.

GAYNOR, J. (dissenting). The plaintiff's intestate was run over and killed by one of defendant's cars at a street crossing in the outskirts of the borough of the Bronx. The manner of his death is described by only one witness. He testifies that he and the deceased were standing at the corner waiting for an uptown car at about 1 o'clock in the morning; that a car approached and crossed the intersecting street, on which there were also car tracks, about as fast as he could walk; that there was an arc light at the corner and the car was lighted; that he motioned with his arm to the motorman as the car came toward where he stood, which was about five feet below the upper crossing and near the uptown track; that the deceased also stood near the track but at the said crossing; that as the rear of the car got to him, the witness, he took hold of the handle and got on the step; that he stood on the step "because I could not get on the platform because the gate was in the way"; he first says the gate was half open, but on cross-examination says that he could not get on the platform because the gate prevented him, and that he caught hold of the top of the gate, which was nearly up to his neck, and remained on the step in that way; that the car was moving as fast as he could walk when he got on the step; that the car did not stop at all so far as he knew; that it was drawing another car which was not lighted; that in a few seconds after he got on the step the deceased took hold of the handle and put his left foot on the step he was on and that the car then gave a jerk and the deceased was thrown off; that he told the conductor, who was all the while on the rear platform, that a man had fallen off and to ring three bells, but the car did not stop; that when it had gone

about fifty feet he told the conductor again to ring three bells, which the conductor did, but as the car continued on, he, the witness, finally jumped off and ran back and found the deceased lying on the track. Another car had come up meanwhile and stopped with its front platform at or over the intestate. The rear of the two cars had run over him. The testimony for the defendant showed beyond dispute that it was a disabled car and was being taken in by the other car, by order of the starter at a station below, and that no passengers were taken on either car. The testimony of the conductor and the starter was that the gates of the cars were closed and latched, and this, as has been seen, was corroborated by the said witness for the plaintiff, although at first he said the gate was half open, which, if true, would not have prevented him from getting upon the platform of the car. The evidence therefore is that the two men got on the step of a moving car which was hauling another car and had its gate shut, which they must have seen with ordinary attention. This alone requires a reversal.

The learned trial judge instructed the jury that the conductor was guilty of no negligence, but submitted to the jury the question whether the motorman was guilty of negligence in causing the car to jerk forward while the intestate was on the step, if they found that he did so, and left them to base a verdict for the plaintiff on such negligence, if they found it. This was error. The motorman was hauling in a disabled car, and was, as ordered, stopping for no passengers, and did not stop for the intestate or his said companion at the crossing. He did not know they got on the car as it was going on its way, and it cannot be held that in the exercise of due care he should have anticipated that they would get on.

The motorman was not in the employ of the defendant at the time of the trial and could not be found by it. The car continued on to the car house at the end of the line without stopping for the accident, and the conductor testifies that he did not see the men at all, knew nothing of the accident, and only learned of it after arriving at the car house.

The judgment should be reversed.